NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0145n.06

No. 09-1480

FILED
Mar 09, 2010
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KEITH L. WILSON,

    Petitioner-Appellee,

        v.

THOMAS K. BELL, Warden,

    Respondent-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Detroit

_____/

Before:      GUY, CLAY, and KETHLEDGE, Circuit Judges.

      RALPH B. GUY, JR., Circuit Judge.    Respondent, Thomas K. Bell, Warden,

appeals from the district court's decision granting petitioner Keith L. Wilson, a state prisoner,

habeas relief on the grounds that vouching by the prosecutor in rebuttal closing argument

resulted in a denial of due process, and that trial counsel's failure to object to the alleged

vouching constituted ineffective assistance of counsel.  Our review of the record leads us to

conclude that the state courts' rejection of these claims was not contrary to, or an

unreasonable application of, Supreme Court precedent.  Accordingly, we reverse and remand

for entry of judgment denying the petition for writ of habeas corpus.

**I.**

**A.**    **Procedural History**

    Keith Wilson, age 33, was convicted on August 4, 2003, following a two-day jury

trial, of two counts of third degree criminal sexual conduct involving two instances of sexual penetration with a "stepdaughter" who was at least 13 and under 16 years of age. *See* MICH. COMP. LAWS ANN. § 750.520d(1)(a). Petitioner was sentenced to concurrent 9 to 15 year terms of imprisonment on each count. The trial court denied petitioner's motion for post-conviction relief, including the instant claims of prosecutorial misconduct and ineffective assistance of counsel. The Michigan Court of Appeals denied Wilson's delayed application for leave to appeal "for lack of merit on the grounds presented," *People v. Wilson*, No. 257718 (Mich. Ct. App. Jan. 20, 2005), and the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed, *People v. Wilson*, 704 N.W.2d 76 (2005) (table).

On May 30, 2006, Wilson filed his application for writ of habeas corpus raising the same three claims that were asserted in the state courts. The magistrate judge recommended that the petitioner's application be denied on the merits. Petitioner objected, and the district court accepted in part and rejected in part the magistrate judge's recommendations. For the reasons set forth in the opinion and order entered April 7, 2009, the district court granted a conditional writ of habeas corpus giving the state 90 days to retry petitioner or release him. Respondent appealed.[1]

**B.      Evidence at Trial**

Petitioner and Veronica Williams, his fiancé at the time, had lived together for five years when the alleged assaults occurred in December 2002 and January 2003. With them

---

[1]The district court entered a stay of the judgment pending appeal.

lived Williams's two older children—the 14-year-old victim Sherika Montgomery and her 13-year-old brother Bryant Williams—petitioner's 10-year-old son, and two young children, ages 2 and 4, that petitioner and Veronica Williams had together. Sherika and Bryant both conceded that they did not like petitioner, who sometimes hit them when he was angry.

Asked if she understood why she was at the trial, Sherika answered, "Because Keith raped me." The victim testified that she had not had sexual intercourse with anyone before petitioner penetrated her. Sherika testified that before the first assault in December 2002, she and Bryant were forced to watch a pornographic movie with petitioner. Then, petitioner told Bryant to watch the other children while he took Sherika upstairs to her mother's room. Petitioner told her to clean up the room, then hit her on the buttocks and said "let's do it." Petitioner offered her money for sex, but she refused. He got a belt and threatened to hit her, and then removed her clothes. Sherika testified that she laid down on the bed and put a pillow over her face. Petitioner penetrated her vaginally, which she testified hurt. Sherika took the pillow off her face and saw petitioner ejaculate on a towel he had placed on her stomach. Petitioner told Sherika to go wash up, gave her $5.00, and told her not to tell anyone or he would beat her.

Bryant corroborated Sherika's testimony concerning this assault, confirming that petitioner made them watch a pornographic movie, instructed Bryant to watch the other children, and took Sherika to an upstairs bedroom. Admitting that he did not see the sexual assault, Bryant testified that when one of the younger children followed them upstairs, Bryant saw petitioner come out of the bedroom "butt naked." Petitioner told Bryant that he was

going to "open her up," and Sherika told Bryant that petitioner had penetrated her. Veronica Williams was not home at the time, and neither Sherika nor Bryant told their mother what had happened.

The second assault occurred in January 2003, again when Veronica Williams was not home. Petitioner kept Sherika home from school, threatened her with a belt, and had vaginal intercourse with her in a downstairs room. Sherika testified that petitioner ejaculated on a shirt he placed on her chest. He offered her $20.00, but she refused it. Bryant confirmed that petitioner kept Sherika home from school that day, and testified that he was in the school office later that morning and overheard petitioner saying his sister was late because they had to see about a problem with the car. Sherika told Bryant that petitioner had sex with her, but she did not tell her mother because petitioner had threatened her. According to Sherika, once when she, Bryant, petitioner, and petitioner's niece were together, petitioner asked them if they had ever "used" a cucumber and offered to teach them how to put a condom on one and "put it in."

Veronica Williams found out about the assaults for the first time from Bryant, after Bryant had an altercation with petitioner on April 3, 2003. On that day, Veronica Williams was not home and petitioner was outside barbequing with the help of Sherika's "godbrother" Jehmetrius Williams (no relation). Bryant was upstairs wrestling with the younger boys, when petitioner's 4-year-old son began to cry. Another child reported that Bryant had hit the boy, and petitioner went upstairs to confront Bryant. They argued, petitioner admitted striking Bryant, and Bryant threatened to go stay with his father. While they argued, Sherika

called 911. According to petitioner, Bryant threatened to tell his mother that petitioner had sex with Sherika.

When the police arrived, petitioner was outside barbequing. The witness accounts of the exchange with police differ, except that they agree that the police left after talking to petitioner and made no report. Petitioner testified that Bryant accused him of molesting Sherika, and that Sherika denied it when asked by the police. Bryant, on the other hand, testified that it was petitioner who preemptively told police that Bryant was making this accusation. Bryant and Sherika both said the police did not talk to her. Jehmetrius testified that Bryant told the police, but the police ignored Bryant and did not talk to Sherika. The officers were not called to testify, and it is unknown whether they would have had anything to contribute.

After the police left, petitioner forbade Bryant from using the telephone to call his father. When Veronica Williams got home, however, they took Bryant to stay with his father. That night, Bryant told his mother that petitioner had sex with Sherika. The next morning, after petitioner left for work, Veronica Williams woke Sherika and asked her about the accusation. Based on what she said, Veronica called 911 and took Sherika to be examined for sexual assault at Providence Hospital. The examiner, Dr. Jeffrey Thewes, testified that Sherika had no infections, was not pregnant, and had no abrasions or tears. Dr. Thewes found that Sherika's hymen was not completely intact, however, which indicated sexual penetration. Finally, the examiner saw no evidence of recent sexual activity.

Petitioner testified on his own behalf, denying that he had intercourse with Sherika

and admitting his prior convictions for embezzlement and filing a false police report. Attempting to deflect the accusation, petitioner testified that sometime in March 2003 he came home to find Sherika and Jehmetrius together with their pants unzipped. Petitioner also claimed that he caught Sherika watching one of the pornographic tapes that belonged to him and her mother. Neither of these claims were included in the statement petitioner gave to police when arrested on these charges, however, and the officer who took the statement testified that he would have made note if petitioner had made these claims.

Jehmetrius testified that he got along with petitioner and would go places with him. Jehmetrius denied ever having sexual intercourse with Sherika and testified that, sometime in March 2003, petitioner told him that he had penetrated Sherika. Specifically, Jehmetrius testified that "[petitioner] told me that he made Sherika lay down and he told her if [s]he didn't he was gonna whip her and made her open her legs and stuck a cucumber in her." Petitioner also told Jehmetrius that he made Sherika stay home from school one day, made her lay down, and put his penis in her vagina. Jehmetrius admitted that he did not tell anyone about what he knew, and the only explanation he offered was that Veronica Williams was "not around" when he was at the house. Sherika testified that she told Jehmetrius about the assaults the night before she told her mother.

C.    **Closing Arguments**

The prosecutor's closing argument emphasized that the jurors were the sole judges of the facts, which were to be determined from the testimony of the witnesses, and that they were free to believe none, all, or only part of the witnesses' testimony. The prosecutor

reminded the jury that his questions and comments were not evidence, then reviewed the evidence and argued that the victim's testimony was corroborated. Defense counsel's argument, in turn, focused on "reasonable doubt"; argued that the physical evidence was consistent with Sherika having consensual sex with someone else; and accused Bryant of having falsely accused petitioner to get petitioner out of the house. On the last point, defense counsel argued that Bryant, a 13-year-old "coming of age," was in conflict with his mother's live-in boyfriend and that the altercation with petitioner on April 3 prompted the accusation.

The prosecutor's rebuttal argument focused on responding to the assertion that Sherika and Bryant were "making this up," as defense counsel had asserted, and addressing the suggestion that Sherika had been sexually active with Jehmetrius. It was in doing so that petitioner claims the prosecutor improperly vouched for the witnesses. Defense counsel did not object, and the trial judge properly instructed the jury concerning the weighing of credibility and that the attorneys' arguments were not evidence. The trial judge denied a motion for post-conviction relief, concluding that there was no objection, that the argument was not improper, and that, to the extent it was improper, it did not provide a basis to grant a new trial.

In seeking leave to appeal in the state courts, petitioner specifically claimed that the prosecutor improperly vouched for the credibility of Sherika and Bryant by stating that they were telling the truth, "this happened to her," and "they didn't make this up." The ineffective assistance of counsel claims included, *inter alia*, the claim that defense counsel failed to object to improper statements in the prosecutor's rebuttal argument. These claims were

repeated in the habeas petition. The district court identified four instances of improper vouching during the prosecutor's rebuttal argument, including one comment that related to the credibility of Dr. Thewes.[2] Finding that the vouching was flagrant, the district court concluded that the state court determination to the contrary was an objectively unreasonable application of Supreme Court precedent. That being the case, the district court also concluded that it was an unreasonable application of *Strickland* for the state court to reject the claim that the failure to object to these statements constituted ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

We review *de novo* the district court's legal conclusions in granting or denying habeas relief. The district court's factual findings are reviewed for clear error, except that factual determinations based on a review of the state court record are reviewed *de novo*. *Holder v. Palmer*, 588 F.3d 328, 337 (6th Cir. 2009); *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000).

## II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs the petition in this case, a writ of habeas corpus may not be granted for any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established

---

[2]The district court correctly concluded that the failure of counsel to object at trial does not bar habeas review of this claim because the state courts did not rely on procedural default in disposing of the claim. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) ("'the mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case'") (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

Federal law, as determined by the Supreme Court," or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(1) and (2). Petitioner seeks relief under the "unreasonable application"

prong of § 2254(d)(1), which permits the grant of habeas relief when "'the state court

identifies the correct governing legal principle from [the Supreme Court] but unreasonably

applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520

(2003) (citation omitted).

It is not enough that the state court decision was incorrect or erroneous; it must have

been objectively unreasonable. *Id*. at 520-21; *see also Williams v. Taylor*, 529 U.S. 362, 409

(2000); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness"). For

purposes of § 2254(d), clearly established federal law refers only to "the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-

court decision." *Williams*, 529 U.S. at 412.

## A.   Prosecutorial Misconduct

The Supreme Court has counseled, albeit in the direct appeal context, that prosecutors

are "to refrain from improper methods calculated to produce a wrongful conviction." *Berger*

*v. United States*, 295 U.S. 78, 88 (1935). On habeas review, however, the Supreme Court

has cautioned that for claims of prosecutorial misconduct that do not implicate a specific

constitutional right, "the appropriate standard of review . . . is 'the narrow one of due

process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S.

168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). That is, for habeas relief to be granted on the basis of a prosecutor's comments, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Donnelly*, 416 U.S. at 643).

The "touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Therefore, even if a prosecutor's conduct was "undesirable or even universally condemned," it does not constitute a due process violation unless the conduct was so egregious that it rendered the entire trial fundamentally unfair. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). Determining the effect on the trial as a whole includes consideration of whether the objectionable content was invited by or was responsive to the defense. *Darden*, 477 U.S. at 182. Moreover, "the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (alteration in original) (quoting *Donnelly*, 416 U.S. at 645).[3]

---

[3]Respondent argues, correctly we might add, that the Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process. This court, while reluctant to grant relief on the basis of a prosecutor's statements in closing argument, has consistently applied the *Donnelly/Darden* standard to such habeas claims of prosecutorial misconduct. *See, e.g., Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001); *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006); *Henley v. Bell*, 487 F.3d 379, 389 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 2962 (2008). We are mindful that this court's treatment of vouching as prosecutorial misconduct subject to review under *Donnelly* and *Darden* is not the last word on the question of what was "clearly established" Supreme Court precedent at the time of the state court's decision. *See, e.g., Mickens v. Taylor*, 535 U.S. 162, 174 (2002) (clarifying that, despite court of appeals' "unblinking" application of conflict-of-interest standard to various situations, the Supreme Court had never extended the standard to conflicts other than concurrent joint representation). Nonetheless,

This court has applied the two-step analysis to determine whether prosecutorial misconduct, including vouching, warrants habeas relief that asks:   (1) whether the prosecutor's conduct was improper, and, if so, (2) whether the misconduct was flagrant. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005); *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001); *see also Gordon v. Kelly*, No. 98-1905, 2000 WL 145144 (6th Cir. Feb. 1, 2000) (concluding that this court's two-step analysis is consistent with the Supreme Court's due process analysis of such prosecutorial misconduct claims); *Smith v. Yukins*, 129 F. App'x 251, 253 (6th Cir. 2005) (citing *Gordon*).   Vouching, we have said, "occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

The four statements identified by the district court as improper—including the two identified by petitioner—are highlighted and set forth in context below.  Specifically, the prosecutor, responding to defense counsel's closing, argued in pertinent part as follows:

> Mr. Harris says that possibly Sherika and Bryant are making this up.  That's what his words are.  Well, lets just use common sense here, if we were going to make this up let's see what kind of Hollywood writer would have to come up with this if it wasn't true.  If they were going to make it up wouldn't it have been just as easy for Bryant to come in here and tell you, and again, this is a

we are bound by this court's determination that the due process standard applies to habeas claims of prosecutorial misconduct, including vouching, under AEDPA "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *See Salmi v. Sec. of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

13-year-old kid. Think about it, wouldn't it be just as easy for him to come in here and tell you, oh I saw it happen. Oh, I saw him on top of my sister. Oh, I saw this. That would have been very easy for him to come in here, if he's lying why not go all the way and lie. How sophisticated of a 13-year-old do you have to be to say I'm not going to say it all the way, I'm going to come up with this. I only saw — it's way too sophisticated for a 13-year-old. **He didn't come in here and tell you something other than the truth. He came in here and told you what he saw happen back in December.**

Next, the prosecutor addressed Sherika's credibility:

Well, maybe Sherika's making it up. Well why in the world — how does Sherika if she is making this up in April pick out of the sky December and January? Why not February and March? Why not that week in April? Why not say it happened two days ago? Why in the world pick two days in the past? . . . Way too sophisticated? She can't tell you, can't make that up because she's not making anything up. Now, you saw her on the witness stand. You judged her, you know, abilities and that. **She's not making any of this stuff up. This happened to her.**

Then, addressing Jehmetrius's testimony, the prosecutor outlined the evidence indicating that Jehmetrius had come to visit petitioner, not Sherika, and suggesting that Jehmetrius's relationship with petitioner may have been the reason he did not share what he knew about the assaults with anyone. The prosecutor summarized this portion of the rebuttal argument, stating:

Why doesn't he tell Ms. Veronica Williams what he knows in March? Maybe that's the very reason he didn't say anything because maybe he looks at Mr. Wilson [a]s a friend, buddy, father figure, or whatever. Once the cat[']s out of the bag he then lets everybody know what he knows. So, don't just jump to the conclusion that hey, he's 17, he's going over to visit, automatically it's got to be Sherika he's going to visit. Don't jump to that conclusion. Mr. Harris . . . has nothing to substantiate that. He's got nothing at all. He could have gotten that from Veronica Williams, he didn't get that from Ms. Williams[,] [w]ho he says is probably the only person here telling the truth. He wants you to disregard everybody's testimony except the defendant's and Ms. Veronica Williams. **I don't — you can do whatever you want, ladies and gentlemen, but I'm telling you I believe that when those kids, those**

**children got up there and testified they told you based on the evidence they told you the truth.  They didn't make this up.**  This too complicated for them to make it up.

Finally, this last passage was immediately followed by the next one:

> **Dr. Thewes, I believe based on the evidence told you the truth**.  That this girl had been sexually violated.  Now, Sherika gets on there, if you want to say she's making it up that's your [pre]rogative.  Go to the jury room and say not guilty.  That's up to you, but before you do that I hope and pray to God, that you take this case seriously, look at all the evidence and I'm convinced that if you do that.  If you look at the evidence we've proven the case beyond a reasonable doubt.

When viewed in context, the first and second instances of alleged vouching with respect to the testimony of Bryant and Sherika did not express a personal belief in the witnesses' credibility or imply that the prosecutor had special knowledge of facts not before the jury.  These statements were part of a broader discussion of the implausibility of the petitioner's theory given the sophistication that would have been necessary to manufacture their accounts had the two not been telling the truth.  These remarks by the prosecutor argued that the evidence and common sense should lead the jury to conclude that these witnesses were credible, and that petitioner was not.  A prosecutor is "free to argue that the jury should arrive at a particular conclusion based upon the record evidence," but "may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999).

With respect to the comment about Dr. Thewes's testimony, petitioner did not argue that the prosecutor had vouched for the examiner's credibility either in state court or his habeas petition.  This may be because the record reflects that there was no credibility contest

concerning Dr. Thewes's testimony that, in his opinion, vaginal intercourse was the reason the hymen was not completely intact. It was also established on cross-examination that his conclusion that there was sexual assault was based on the victim's report, not the physical examination. The defense argued not that Dr. Thewes was not believable, but that the evidence was consistent with consensual sex with someone besides petitioner. Assuming that the claim is not procedurally barred, the statement in context did not constitute improper vouching for the credibility of Dr. Thewes.

The third instance of alleged vouching is more problematic, however. It is permissible for the prosecutor to state a "belief" that the evidence established guilt beyond a reasonable doubt. *Id*. at 737-38. But, for example, it was improper for the prosecutor in *Byrd* to state in closing: "I believe him, and I submit that you should believe him." *Byrd*, 209 F.3d at 537. Nor does injecting the phrase "based on the evidence" in the remark convert an improper argument into a proper comment on the evidence. *See United States v. Bess*, 593 F.2d 749, 756 (6th Cir. 1979). In this case, the prosecutor's statement grew out of a legitimate argument concerning the inferences to be drawn from the evidence, but went further to express the "belief," "based on the evidence," that "those kids . . . told you the truth." This statement was framed by permissible argument regarding credibility, but injected the prosecutor's personal belief that the victim and her brother were credible. We would conclude that this statement was improper on direct appeal, and, although a closer question, also find that it would be objectively unreasonable for the state court to conclude this was a permissible comment on the evidence.

To determine whether an improper comment was sufficiently flagrant to warrant reversal, we consider the following four factors: (1) "whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant"; (2) "whether the conduct or remarks were isolated or extensive"; (3) "whether the remarks were deliberately or accidentally made"; and (4) "whether the evidence against the defendant was strong." *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). First, although the improper vouching did not misstate the evidence in a way that would mislead the jury, it presented a danger that the jury might trust the prosecutor's judgment rather than its own view of the evidence. *See United States v. Young*, 470 U.S. 1, 18-19 (1985). This factor weighs in favor of petitioner's claim.

However, the misconduct was not extensive, as it was confined to rebuttal and was a single isolated remark. Nor was there a basis to conclude that it was deliberately made in the sense of attempting to mislead or confuse the jury. Moreover, apart from this statement, the jurors were advised by the prosecutor in closing and the trial judge in the instructions that they were the sole judges of the credibility of the witnesses. *See Byrd*, 209 F.3d at 538. Finally, although disputed by petitioner, substantial evidence was offered through the testimony of the victim, her brother, and her godbrother. The victim testified specifically to two instances of vaginal penetration by petitioner while she was at least 13 but not yet 16 years of age, and her testimony was corroborated by Bryant and Jehmetrius. The defense theory that Bryant and Sherika concocted the accusation of rape to be out from under the authority of their mother's fiancé was just that, a theory based solely on the fact that Bryant

told his mother what he knew when he was angry with petitioner over their altercation. There was no other evidence to support the implication that Sherika was sexually active with someone else, or that she or Bryant were otherwise not trustworthy.[4]

Weighing these factors, we conclude that the prosecutor's improper comment did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Accordingly, we also find that it was not an unreasonable application of Supreme Court precedent for the state courts to have concluded that the prosecutor's rebuttal argument was not sufficiently flagrant to require reversal.

## B.    Ineffective Assistance of Counsel

Generally, a defendant alleging ineffective assistance of counsel must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Defendant must overcome the presumption that the challenged action might be considered  sound trial strategy. *Id*. at 690. We have explained that an ineffective assistance of counsel claim based on trial counsel's

---

[4]On this factor, the district court concluded that "the evidence against Defendant presented at trial—*other than the testimony for which the prosecutor vouched*—was not substantial." (Order, p. 5) (emphasis added). Although one of the cases cited by the district court seems to apply the fourth factor in this way, *see Washington v. Hofbauer*, 228 F.3d 689, 707 (6th Cir. 2000), this last factor examines "'the total strength of the evidence against the accused.'" *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (quoting *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)); *see also United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

failure to object to prosecutorial misconduct "hinges on whether the prosecutor's misconduct was plain enough for a minimally competent counsel to have objected." *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000).

In *Washington*, a case relied upon by the district court, this court found the prosecutor engaged in severe misconduct through the pervasive use of "bad character" evidence in closing argument and rebuttal and the misrepresentation of the facts in evidence in such a way as to mislead the jury regarding the credibility of the minor victim. The failure to object to this clear misconduct could not be justified as legitimate trial strategy and fell below an objective standard of reasonably competent assistance. Further, given that there was no evidence outside the testimony of the victim, there was a reasonable probability that but for the failure to object and request curative instructions the result would have been different. This court held that the state court's application of *Strickland* was not simply incorrect, but was objectively unreasonable. *See also Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005) (holding that "failure to object to any aspect of the prosecutor's egregiously improper closing argument was objectively unreasonable" where prosecutor called the defendant a liar, stated the victim and her family were "absolutely believable," misrepresented the doctor's testimony concerning the physical evidence, and made derogatory remarks and arguments based on "bad character").

We find that the district court's reliance on *Washington* and *Hodge* was misplaced as both cases involved much more severe prosecutorial misconduct. Here, although defense

counsel had grounds to object to the prosecutor's statement in rebuttal, the failure to object to this isolated instance of vouching was not objectively unreasonable. Nor is there a reasonable probability that but for the failure to object in this case and obtain a curative instruction, the result of the proceedings would have been different. Further, we conclude that the state court's rejection of this claim of ineffective assistance of counsel was not an objectively unreasonable application of *Strickland*.

The district court's judgment granting a conditional writ of habeas corpus is **REVERSED** and the case is **REMANDED** for entry of judgment denying the habeas petition in this case.

**CLAY, Circuit Judge, dissenting.** Because the prosecutor committed blatant prosecutorial misconduct by repeatedly commenting on the credibility of witnesses throughout his rebuttal closing argument, and because Petitioner's own counsel was ineffective by failing to object to the prosecutor's improper tactics, I would affirm the district court's grant of the writ of habeas corpus. Therefore, I respectfully dissent.

The majority's analysis goes awry when it attempts to limit the scope of the prosecutor's improper conduct by claiming that some of the statements the district court found to represent prosecutorial misconduct were not actually improper. The majority never actually analyzes prosecutorial statements in previous cases dealing with improper vouching, instead concluding that some of the prosecutor's comments "argued that the evidence and common sense should lead the jury to conclude that these witnesses were credible, and the petitioner was not." (Majority Op. at 13). This faulty approach allows the majority to exclude two highly improper statements. First, the prosecutor stated in reference to Bryant Williams: "He didn't come in here and tell you something other than the truth. He came in here and told you what he saw happen back in December." In reference to Sherika Williams, the prosecutor said: "She's not making any of this stuff up. This happened to her."[1]

This Court has held that it is "patently improper for a prosecutor either to *comment on the credibility of a witness* or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) (emphasis added). The two

---

[1] The majority is correct that the vouching for Dr. Thewes should not be considered because Petitioner failed to pursue that argument in state court.

statements set forth above are clearly comments on the credibility of witnesses and thus improper. No case cited by the majority finds that specifically stating the prosecutor's belief in the veracity of a witness' testimony is not improper.

The majority does find one statement improper, when the prosecutor stated: "I'm telling you I believe that when those kids, those children got up there and testified they told you based on the evidence they told you the truth." This statement is apparently improper because when the prosecutor specifically stated that it was his belief that the witnesses were credible, it "injected the prosecutor's personal belief that the victim and her brother were credible." (Majority Op. at 14). The distinction created by the majority has been specifically rejected by this Court. *Johnson v. Bell*, 525 F.3d 466, 484 n.16 (6th Cir. 2008) ("We note that it is not necessary for the prosecutor actually to use the words 'I believe,' or some similar phrase, for a statement to constitute an improper comment on the credibility of witnesses."). In *Hodge*, the Court found a prosecutor's statements that the defendant "is lying to extricate himself from what he's done" and that a government witness "is absolutely believable, her family is absolutely believable" improper. 426 F.3d at 377-79. These statements are analogous to the prosecutor's statements in this case that Bryant "didn't come in here and tell you something other than the truth" and that Sherika is "not making any of this stuff up."

Furthermore, in this case in which sexual misconduct with a minor was alleged, binding precedent instructs us to be particularly observant in insuring that constitutional strictures are followed. "Cases involving sexual abuse exert an almost irresistible pressure on the emotions of the bench and bar alike. Because such cases typically turn on the relative

credibility of the defendant and the prosecuting witness, however, a strict adherence to the rules of evidence and appropriate prosecutorial conduct is required to ensure a fair trial." *Martin v. Parker*, 11 F.3d 613, 616-17 (6th Cir. 1993).

Since all three statements were improper, we must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir.1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). The four factors to determine whether prosecutorial misconduct is flagrant are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id*. The majority admits that the first factor weighs in Petitioner's favor but finds that the other three support Respondent.

The majority's failure to appreciate that multiple remarks were improper skews its analysis of the second factor. The prosecutor in his rebuttal closing argument repeatedly vouched for his witnesses. The majority relies on the fact that the comments were limited to rebuttal closing argument but ignores the fact that the prosecutor's statements in rebuttal were the "last words from an attorney that were heard by the jury before deliberations," *Carter*, 236 F.3d at 788 (finding prosecutorial misconduct when almost all the improper actions by prosecutor were in rebuttal closing argument). This factor may not weigh strongly in either party's favor, but the prosecutor did make multiple improper statements at the most

crucial time of the trial.

Contrary to the majority's position, the third and fourth prongs of the flagrancy test are easily satisfied by Petitioner. The prosecution's rebuttal closing argument was rife with examples by which the prosecutor expressed his personal opinion about the credibility of witnesses, strongly indicating that the remarks were deliberate. In addition, evidence other than the testimony of the children for whom the prosecutor improperly vouched was almost non-existent. *Cf. Washington v. Hofbauer*, 228 F.3d 689, 707 (6th Cir. 2000) (finding in a trial that was a credibility contest "nothing was more important to the case than the indicia that one story was more believable than the other"). This case was almost exclusively a credibility battle between the children and Petitioner. The evidence against Petitioner was the testimony of two children who he asserted had a motive to make up their story. The children's testimony, if believed, is certainly sufficient to sustain a conviction. Absent that testimony, however, the prosecution presented no persuasive physical evidence that could lead to Wilson's conviction. In its brief, Respondent contends that the physical evidence "was consistent with a sexual assault," but that is a far cry from there being persuasive evidence of a sexual assault committed by Wilson. The testimony of two children with a possible motive to lie is not strong evidence, and the fourth prong weighs in Petitioner's favor.[2]

Therefore, the prosecutor's statements were both improper and flagrant, and the

---

[2] In weighing the strength of the evidence, the majority remarkably puts the burden on Petitioner to prove that he is innocent. The inquiry concerns the strength of the evidence against Petitioner, and the only evidence was the testimony for which the prosecution improperly vouched.

district court's grant of the writ should be affirmed on that basis alone.

As if one constitutional violation was insufficient to ignore, the majority also improperly reverses the district court's analysis of Petitioner's claim of ineffective assistance of counsel. The majority's flawed analysis of the prosecutorial vouching issue contaminates its analysis of the ineffective assistance of counsel inquiry. In order to establish ineffective assistance of counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. at 668, 687-88 (1984). By limiting the inappropriate remarks to one comment, the majority excuses Petitioner's counsel's failure to object. However, the record abundantly demonstrates that the prosecution's rebuttal closing argument contained repeated, inappropriate comments on witness credibility that should have demanded multiple objections from Petitioner's counsel. In a case in which credibility was so important, Petitioner's counsel had no legitimate strategic reason to fail to object.[3] Petitioner's counsel's failure to object therefore undoubtedly fell below the objective standard of reasonableness.

The question of prejudice under *Strickland* is also easily answered in Petitioner's favor. The district court properly relied on *Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005).

---

[3] Respondent makes no coherent argument on the first prong of *Strickland*, arguing merely that an objection by Petitioner's counsel would highlight the credibility contest, which was damaging to Petitioner because he had previous convictions of embezzlement and filing a false police report. The fact that the case was a credibility contest was self-evident, and assuredly allowing the prosecutor to improperly vouch for his witnesses did not further Petitioner's case in any fashion. Respondent cites no case in which a failure to object to such blatant vouching was deemed proper trial strategy.

In *Hodge*, this Court found the prejudice prong satisfied where the prosecutor made "numerous statements on witness credibility" and where "the jury's determination as to [Defendant's] guilt or innocence hinged almost entirely on the credibility of [Defendant] and [the victim's mother.]" *Id*. at 378-79. *Hodge*, like this case, was a prosecution for child rape that was basically a credibility battle. The prosecutor made repeated, improper statements in his closing argument. "Unfortunately, when a prosecutor does act unfairly, there is little a defendant can do other than rely on his or her attorney to lodge an appropriate and timely objection. A failure to make such an objection can have devastating consequences for an individual defendant." *Id*. at 377. The improper statements by the prosecution there, as here, raise a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The rationale of *Hodge* should apply with equal force to the case at hand. This case was almost entirely a credibility battle, and the jury was going to find against Petitioner if they believed the children and for Petitioner if they believed him. The prosecution's intentional decision to improperly vouch for the credibility of the child witnesses undoubtedly prejudiced Petitioner. The fact that standard boiler-plate instructions that attorneys' comments are not evidence were given by the court to the jury is insufficient. The prosecutorial misconduct was sufficiently blatant that a special curative instruction would have been appropriate.[4] *See Carter*, 236 F.3d at 787 (finding that "measures more substantial

---

[4] While objections during the middle of closing argument "are matters to be approached cautiously. At the very least, a bench conference might have been convened out of the hearing of the jury . . ., and an appropriate instruction given." *United States v. Young*, 470 U.S. 1, 13-14 (1985).

than a general instruction that 'objections or arguments made by the lawyers are not evidence in the case' were needed to cure the prejudicial effect of the prosecutor's comments during closing argument"); *Washington v. Hofbauer*, 228 F.3d at 707 (finding unreasonable application of *Strickland* where state court did not find ineffective counsel's failure to object to prosecution's improper statements). Defense counsel's failure to object either during the prosecutor's rebuttal argument or in a separate sidebar was inexcusable. No curative instruction was given to indicate that the prosecutor's argument was improper, leaving the statements on the record before the jury and very likely prejudicing its members.

Wilson, therefore, was subject to two separate violations of his constitutional rights. One consisted of the prosecutor's repeated improper vouching in rebuttal closing argument in violation of Petitioner's due process rights. In addition, Petitioner's counsel's failure to object to the prosecution's improper comments violated Petitioner's right to counsel. For these reasons, I respectfully dissent.