**Tony CALDWELL, Petitioner–Appellant,**

v.

**Harry K. RUSSELL, Respondent–Appellee.**

**No. 96–3581.**

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1999.

Decided and Filed June 2, 1999.

---

9. *See supra* note 7, and accompanying text at page 8.

John H. Forg (argued and briefed), Forg & Forg, Cincinnati, OH, for Petitioner–Appellant.

Charles L. Wille (argued and briefed), Office of the Attorney General of Ohio, Columbus, OH, for Respondent–Appellee.

Before: KRUPANSKY, BOGGS, and CLAY, Circuit Judges.

KRUPANSKY, Circuit Judge.

The petitioner-appellant, Tony Caldwell ("Caldwell" or "the petitioner"), a state prisoner convicted of murder under Ohio law, has challenged the district court's denial of his application for a writ of habeas corpus under 28 U.S.C. § 2254.[1] He has contended that the lower federal court erroneously rejected his claims that the Ohio state courts had denied him constitutionally guaranteed due process because his jury trial had purportedly been infected by an unfairly prejudicial prosecutorial closing argument and by the state's alleged failure to preserve potentially exculpatory evidence, and because the trial evidence was allegedly insufficient to prove his criminal culpability of murder beyond a reasonable doubt.

On the evening of November 13, 1987, the petitioner, a resident of a rooming house situated in Wellston, Ohio, became involved in an altercation at that location.

Caldwell overheard his sister Joyce Reynolds ("Reynolds") admonishing Rick Henry ("Henry"), a fellow boarder at the residential inn, to keep away from her young son, after an intoxicated Henry had engaged the boy in conversation on the boarding home's front porch. A commotion followed, which prompted Caldwell to appear on the porch, physically seize Henry, and instruct him to leave his sister alone. He further invited Henry to fight him if he wanted to fight someone. Reynolds intervened by asking her brother to stay out of "her fight." Caldwell then returned to his upstairs room.

Shortly thereafter, Henry entered Caldwell's dwelling in an effort to resume their confrontation. After Henry resisted Caldwell's instruction to depart his lodging, Caldwell fired a warning volley from his single-shot shotgun over Henry's head. Despite the pleas of Reynolds, and Henry's cohabitating girlfriend Rhonda Tiller ("Tiller"), to desist, Henry continued to harass Caldwell. Caldwell then inflicted a knife wound upon him, which persuaded Henry to return to his apartment, with Tiller's assistance.

Almost immediately upon his return to his chambers, an enraged and inebriated Henry bolted once again for Caldwell's quarters. Armed with a board with protruding nails which he had found in the hallway, Henry burst into Caldwell's room a second time. Caldwell testified at trial that Henry threatened to kill him, and despite Caldwell's warning orders to depart his apartment, Henry advanced towards him. Caldwell fired his shotgun once into Henry's abdomen, inflicting a mortal wound. Although paramedics arrived promptly, Henry expired at a local hospital within several hours. Eyewitnesses, including a paramedic and two police officers, testified at trial that, immediately following the fatal incident, Caldwell

---

1. Section 2254(a) stipulates that a federal court "shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

repeatedly made statements to the effect that he shot Henry in anger because Henry had invaded his home and was annoying him, and that he disliked him. At trial, no witness at the post-shooting scene testified that Caldwell had then stated that fear for his bodily safety had motivated the shooting, although Caldwell testified that he in fact had acted in self-defense.

On November 27, 1987, an Ohio grand jury returned a two-count indictment against Caldwell for (1) murder, with firearm and prior conviction specifications, under OHIO REV. CODE ANN. §§ 2903.02 & 2941.14,[2] and (2) possession of a weapon under a disability in violation of OHIO REV. CODE ANN. § 2923.13. In 1988, following a jury trial before an Ohio Commons Pleas Court, Caldwell was convicted on both charges. On May 12, 1988, the state trial judge sentenced Caldwell to prison for fifteen years to life for the murder conviction; three years of actual incarceration for the firearm specification to be served consecutive to the murder penalty; and eighteen months to five years of imprisonment for the count of possession of a firearm while under a legal disability, to run concurrently with the murder sentence but consecutively with the punishment imposed for the firearm specification.

On Caldwell's direct appeal, the Ohio Court of Appeals reversed his conviction and sentence, and remanded the cause for a new trial. Caldwell's second jury trial on the two-count indictment culminated on June 25, 1990 with guilty verdicts on both charges. The state trial judge then reimposed the identical sentence which previously had been ordered following Caldwell's initial conviction, allowing full credit for time served. On April 28, 1992, the Ohio Court of Appeals rejected Caldwell's direct appeal of his second conviction. On October 21, 1992, the Ohio Supreme Court denied Caldwell's petition for leave to appeal to that forum. On February 4, 1994, acting *pro se*, Caldwell applied in the United States District Court for the Southern District of Ohio for a writ of habeas corpus under 28 U.S.C. § 2254. Following the district court's May 7, 1996 adoption, over Caldwell's objections, of a magistrate judge's report and recommendation which had counselled rejection of each of Caldwell's three assignments of constitutional error, and the court's issuance of a certificate of probable cause authorized by former 28 U.S.C. § 2253,[3] Caldwell on May 28, 1996 initiated a *pro se* appeal to the Sixth Circuit. On March 24, 1998, this court *sua sponte* appointed counsel to prosecute Caldwell's appeal. Caldwell's court-sponsored attorney has briefed and argued his appeal before this forum.

■■■ A federal appellate court reviews section 2254 inmate petitions *de novo;* although district court findings of fact are generally reviewed for clear error, factual findings based upon the district court's review of state court records or written decisions (such as those made by the district court in the case *sub judice* ) receive plenary review. *Moore v. Carlton,* 74 F.3d 689, 690–91 (6th Cir.1996). Under the pre-April 24, 1996 version of section 2254, which governs this action (*see* note 3 above), federal courts generally accord a "presumption of correctness" to state court factual findings. 28 U.S.C. § 2254(d) (repealed); *see Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Whereas an appellate court on habeas review decides federal law questions *de novo, Marshall,* 459 U.S. at 431, 103 S.Ct. 843, the federal reviewing court is generally bound by state court interpre-

---

2. All citations herein to Page's Ohio Revised Code Annotated (Anderson 1996), Title 29, reference the volume designated "For Offenses Committed PRIOR TO July 1, 1996."

3. Because Caldwell had instituted his habeas petition prior to April 24, 1996, which was the effective date of Congress' amendments to the federal habeas corpus statutes enacted by the Antiterrorism and Effective Death Penalty Act of 1996, the prior version of section 2253 controls the petitioner's subject action. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

tations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A section 2254 habeas petitioner must prove that a state court trial error had denied him a federal constitutional right, and that such denial has caused him "actual prejudice" in that it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See also O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (dictating that a constitutional trial error should be deemed prejudicial if "grave doubt" exists regarding whether its effect on the jury's verdict was harmless).

At trial, Caldwell generally did not oppose the state's proof of the Ohio elements of murder. *See* OHIO REV.CODE ANN. § 2903.02;[4] *Rhodes v. Brigano*, 91 F.3d 803, 806 (6th Cir.1996), *cert. denied*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 179 (1997). Instead, he relied upon the affirmative excuse or justification of self-defense. *See* OHIO REV.CODE ANN. § 2901.05(C)(2) (defining "affirmative defense" to include "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence"); *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166, 167–68 (Ohio 1986) (explaining that Ohio law recognizes self-defense to comprise an affirmative defense to a murder charge), *aff'd*, 480 U.S. 228,

107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).[5] In Ohio, the accused bears the burden of proving an affirmative defense by a preponderance of evidence. OHIO REV.CODE ANN. § 2901.05(A); *Martin*, 488 N.E.2d at 167–69. In the case *sub judice*, the jurors, via their guilty verdict, revealed that they had not been persuaded that Caldwell had mortally wounded Henry as a justifiable defensive measure.

■ Through counsel, Caldwell has argued that three constitutional due process errors tainted his second state court trial. Initially, Caldwell has contended that the Ohio prosecutor's closing arguments deprived him of a fair trial by asserting facts not in evidence in opposition to Caldwell's self-defense theory, as well as by interjecting improper prosecutorial opinion regarding the accused's guilt. Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *Accord United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Blandford*, 33 F.3d 685, 708 (6th Cir.1994); *United States v. Bess*, 593 F.2d 749 (6th Cir.1979).

■ Caldwell has faulted a passage from the government's initial closing statement:

> We had a warning shot fired prior to this over the Defendant's [sic—victim's] head. That would have required the Defendant to break this [the shotgun]

---

4. That section recited:
 (A) No person shall purposely cause the death of another.
 (B) Whoever violates this section is guilty of murder[.]

5. The Ohio Supreme Court has articulated three necessary components of self-defense:
 To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger.
 *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (Ohio 1979) (syllabus paragraph 2). *See also State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279, 1281 (Ohio 1990).

down, remove this bullet or this casing, and put a fresh one in when he thought the fight was over. He didn't tell us about that did he?

The petitioner has additionally assailed a portion of the state's rebuttal argument presented at trial:

Now you can go back into the Jury Room and check me out if you want to. You can take the gun, break it down, because it's going to go back there with you. These blank shells are going to go back there with you. And you can check out what [state's co-counsel] said about this gun because that's evidence. I'm going to take this tag and show you that [co-counsel] says the shell doesn't automatically eject. You can check this out. Those of you who have shotguns and are familiar with them check this out if you want to. That shell doesn't automatically eject. That means that sometime, sometime, we don't know when, the defendant had to reach in and pull this shell out and put another shell in. Another thing about this shotgun is it won't shoot once you close it because it has a device on there known as a trigger. You have to pull the trigger back to get it to shoot.... You could test and see what four pounds or four and a half pounds of pull means. And you can see how hard it is to pull back. And if you all test it I believe that you will come to the conclusion that there had to be some planning to get this gun ready for the second shooting event. There had to be some planning involved on the part of the Defendant.

Thus, the prosecution suggested an inference that Caldwell had planned to fire upon Henry after Henry had departed Caldwell's room on the first occasion, when the confrontation between the two men had ostensibly subsided. The state designed that argument to buttress the conclusion that Caldwell had planned to shoot Henry at a time when Henry was not actively threatening or harassing him, hence advancing the urged inference that

Caldwell's deadly actions were inspired by ill will towards Henry rather than by defensive necessity. Caldwell has posited that the faulted excerpts interjected facts not in evidence concerning the mechanics and operation of the subject shotgun; and interposed speculation regarding the time and effort required of the defendant to reload the weapon, in the absence of actual proof of Caldwell's familiarity and competence with the subject firearm.

■ Caldwell's posture was ill conceived. The prosecutorial remarks in controversy were supported by the subject shotgun, which had been admitted into evidence. Moreover, even if the targeted comments had been unsupported by evidence, they could not have materially prejudiced the defendant. The state's argument that Caldwell's mere reloading of his weapon prior to his second hostile encounter with Henry somehow negated his self-defense claim was susceptible to refutation during defense counsel's closing argument.

■ Caldwell has also attacked the prosecutor's statement in summation that "I believe that all the testimony shows beyond a reasonable doubt [that Caldwell] purposely took the life of Ricky Lee Henry." Ordinarily, a prosecutor may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the state's representative exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof. *United States v. Carroll,* 26 F.3d 1380, 1387–89 (6th Cir.1994); *United States v. Dandy,* 998 F.2d 1344, 1353 (6th Cir.1993); *Bess,* 593 F.2d at 753–56. By contrast, a state's attorney is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt. *See United States v. Morris,* 568 F.2d 396, 402 (5th

Cir.1978) (explaining that a government attorney may properly state "I believe that the evidence has shown the defendant's guilt," but may not assert "I believe that the defendant is guilty."). The statement here in controversy constituted an expression of the former, rather than the latter, *Morris* variety, and thus no prosecutorial misconduct occurred.

■ Second, Caldwell has claimed that Ohio denied him a constitutionally fair trial because the local police neglected to preserve a T-shirt which the victim purportedly wore during the fatal shooting. The petitioner has theorized that gunpowder residue on that shirt would have proved that he had fatally injured the victim from a close range. Although Caldwell testified that Henry wore a T-shirt, some witnesses to post-shooting events testified that they did not recall if Henry had been wearing a shirt.

■ Despite that evidentiary conflict, the trial judge permitted both the defense and the prosecution to proffer expert testimony premised upon the assumption that the victim had worn a shirt, thereby creating a contest of expert witness credibility regarding the evidentiary significance of the postulated shirt. *United ed States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 1266, 140 L.Ed.2d 413 (1998) (positing that, in criminal trials, the jury's "core function" is to resolve witness credibility and assign weight to evidence, including expert witness testimony); *Morales v. American Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir.1998). A jury's credibility judgments are normally beyond the scope of appellate review.[6] *United States v. Martin*, 25 F.3d 293, 297 (6th Cir.1994). Caldwell's forensic expert testified at trial that if, when shot, Henry had been wearing a shirt outside of his trousers, he might of have been standing less than two feet away from the shotgun muzzle, because the shirt would have screened gunpowder residue, thereby accounting for the absence of powder traces from the victim's trousers despite a hypothesized close-range discharge. In contradistinction, Ohio's forensic expert testified that if Henry had worn the shirt tucked inside of his trousers (or had not worn a shirt), the absence of powder traces on his trousers would evidence a firing distance of more than four feet.

■ Although an appellate court may not second-guess a jury's credibility assessment as determined with reference to the record proof, or re-weigh the extant record evidence, Caldwell has argued that, had the shirt been preserved, and had scientific tests revealed gunpowder traces upon that shirt, the jurors might have been influenced to accept his expert's conclusion that Caldwell shot Henry at close range, and thus in turn might have concluded that he acted in self-defense; therefore the authorities' failure to preserve the shirt deprived him of due process. However, assuming the shirt's existence *arguendo*, the state nevertheless did not deprive Caldwell of due process by failing to retain it for evidentiary purposes. A suspect's due process rights are offended when official investigators neglect to preserve evidence which possesses *apparent exculpatory value*. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). As illustrated by the conflicting expert opinions, the subject shirt would have supported Caldwell's theory only if laboratory tests returned positive for gunpowder, but would have bolstered the state's case if those tests detected no gunpowder. Accordingly, the shirt did not possess *apparent* exculpatory value, because negative gunpowder test results would have discredited the

---

6. On collateral review, as in other genres of appellate review, the court must defer to a jury's credibility determinations and resolutions of conflicts in testimony, weight accorded to evidence, and reasonable inferences drawn from the basic facts to reach ultimate factual conclusions. *Herrera v. Collins*, 506 U.S. 390, 401–02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir.1992).

defense contention that Caldwell shot Henry only after Henry drew menacingly near to Caldwell.

In *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), law enforcement agents, through negligence or inadvertence, failed to properly preserve evidence, including evidence contained on the victim's clothing, which, after forensic testing, may (or may not) have exonerated the defendant. The Supreme Court explained that "the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," constitutes a due process deprivation only when the police have acted in "bad faith." *Id.* at 57–58, 109 S.Ct. 333. The Court elaborated:

We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.* at 58, 109 S.Ct. 333.

In the action *sub judice,* Caldwell has not evidenced that the police considered the shirt to have been exculpatory, or had otherwise acted in bad faith by discarding it (again assuming the existence of a shirt); thus no due process violation transpired. Moreover, both defense counsel and the prosecution were permitted to comment upon the legal and forensic significance of the shirt, or its absence, as developed by their respective expert testimony. Obviously, the jury's verdict reflected its assignment of greater credibility to the evidence developed by the state, including the state's forensic expert's testimony.

Third, and finally, the petitioner has challenged the constitutional sufficiency of the trial evidence supportive of his murder conviction.[7] However, he procedurally defaulted that contention by neglecting to assert it via his petition for review before the Ohio Supreme Court.[8] *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A federal habeas forum may excuse a procedural default if a "fundamental miscarriage of justice" will otherwise result. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Caldwell has averred that fundamental justice requires this court, on collateral review, to reevaluate the constitutional sufficiency of the trial evidence, because the unavailability of the shirt allegedly worn by Henry purportedly rendered the guilty verdict on the murder charge unreliable.

In the case *sub judice,* the jury concluded that Caldwell had "purposely cause[d] the death of [Henry]." Оню Rev. Code Ann. § 2903.02(A). At trial, as developed above, Caldwell maintained that the

---

7. Trial evidence is sufficient to support a conviction if, after viewing the evidence, and the reasonable inferences to be drawn therefrom, in the light most favorable to the prosecution, the reviewing court can conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

8. Caldwell has exhausted his available state court remedies related to his evidence sufficiency contention, because he cannot now seek post-conviction relief in the Ohio courts for any claim which he could have asserted in his prior direct appeal to the Ohio Supreme Court. *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169, 170–71 (Ohio 1982); *Leroy v. Marshall,* 757 F.2d 94, 97 (6th Cir.1985). *See generally Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (instructing that exhaustion of all available state court remedies must precede a section 2254 petition for collateral relief in federal court).

shirt was material to his self-defense theory because, if gunpowder particles were identified thereon, that evidence would have bolstered his claim that he wounded the armed and agitated Henry only after Henry had moved within striking distance of the shooter. However, a defendant may be convicted of a crime in accordance with due process strictures "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, the due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime. *See Allen v. Redman,* 858 F.2d 1194, 1196–98 (6th Cir.1988). Caldwell did not effectively challenge the sufficiency of the evidence in support of the essential state law elements of murder, and indeed has never denied that he purposely killed Henry; he has only faulted the jury's refusal to credit his proffered affirmative excuse or justification for that purposeful killing.

This court has also carefully considered, and rejected, the additional arguments advanced by Caldwell. Because Caldwell has failed to prove that Ohio deprived him of any constitutional right, the district court's rejection of his petition for a writ of habeas corpus is **AFFIRMED.**