**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0400n.06

**No. 07-3920**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 02, 2010**
LEONARD GREEN, Clerk

NATHANIEL J. RICHARDSON, JR.,      )
                                   )
    Petitioner-Appellant,           ) ON APPEAL FROM THE UNITED STATES
                                   ) DISTRICT COURT FOR THE SOUTHERN
v.                                 ) DISTRICT OF OHIO
                                   )
WARDEN, LEBANON CORRECTIONAL       )
INSTITUTION,                       )                OPINION
                                   )
    Respondent-Appellee.            )

Before:  CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

**DAN AARON POLSTER, District Judge.**  Petitioner-Appellant Nathaniel Richardson, Jr.

("Richardson") filed, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

United States District Court for the Southern District of Ohio denied the petition.  Richardson now

appeals the denial of the petition.  Because there is sufficient evidence to support his conviction, the

district court's denial of Richardson's petition is affirmed.

**I.      Background**

In 2001, a grand jury in Hamilton County, Ohio, indicted Richardson for murder with two

firearm specifications.  Richardson entered a plea of not guilty by reason of insanity and waived his

right to a trial by jury.

_____

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of
Ohio, sitting by designation.

The facts of the case are brief and uncontested. Indeed, the entire incident was captured on a video surveillance camera with audio. The following facts were found by the Ohio Court of Appeals in denying Richardson's petition for state post-conviction relief:

> The evidence presented at the criminal trial showed that Richardson was in a small grocery store when the victim approached Richardson and asked him for a quarter. When Richardson refused, the victim began to curse at him. Richardson left the store, but quickly reentered. The victim's back was turned to Richardson. Richardson walked past the victim, turned, and approached the victim from behind. Richardson then drew a gun and shot the victim in the back of the head, killing him.

(Dist. Ct. Dkt. 25, Ex. 33).

After a bench trial, the Hamilton County Common Pleas Court found Richardson guilty of murder with firearm specifications and sentenced him to fifteen years to life on the murder count and three years on one of the firearm specifications "to be served consecutively and prior to the sentence in the underlying offense." (Dist. Ct. Dkt. 24, Ex. 9).

Richardson appealed his conviction, and after exhausting his state court remedies, he filed the instant habeas petition asserting thirteen grounds for relief: (1) the police and prosecution tampered with evidence; (2) two prosecution witnesses gave perjured testimony; (3) the police and prosecution failed to disclose evidence favorable to the defense; (4) his conviction was obtained as a result of police and prosecutorial misconduct, including evidence tampering, perjury, and failure to disclose favorable evidence; (5) he was denied effective assistance of counsel; (6) his post-conviction claims were not barred by res judicata; (7) the state courts applied the wrong legal standards; (8) he was denied counsel and investigative and expert assistance in his post-conviction proceedings; (9) he was denied an independent psychiatric expert; (10) the weight of the evidence at trial was sufficient to sustain a finding of not guilty by reason of insanity; (11) the element of criminal intent or guilty mind (*mens rea*) was not proven beyond a reasonable doubt; (12) his

conviction violated the prohibition against cruel and unusual punishment; and (13) he was denied a trial by an impartial and neutral judge.

The magistrate judge issued a report and recommendation concluding that Richardson's petition should be denied on the merits,[1] and that a certificate of appealability should issue only for the claims alleged in grounds 10 and 11. (Dist. Ct. Dkt. 51, R&R). Over Richardson's and the respondent's objections, the district court adopted the report and recommendation in its entirety. (Dist. Ct. Dkt. 67).

Richardson petitioned this court for an expanded certificate of appealability, which was denied. Accordingly, the only issues on appeal are grounds 10 and 11: whether the evidence at trial was sufficient to sustain a finding of not guilty by reason of insanity and whether the element of criminal intent or guilty mind (mens rea) was proven beyond a reasonable doubt.

## II.    Law & Analysis

This court reviews the grant or denial of a writ of habeas corpus *de novo*. *Holder v. Palmer*, 588 F.3d 328, 337 (6th Cir. 2009).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Ricahrdson's petition. Under AEDPA, when a state court has "adjudicated . . .the merits" of a defendant's claim, we may only grant a writ of habeas corpus if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[1] All grounds were denied on the merits, with the exception of ground 9, which was waived and therefore procedurally barred from review.

A state court holding is contrary to clearly established Supreme Court precedent if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). We may find that the state court unreasonably applied Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular [petitioner's] case." *Id.*, at 407-08.

"Further, federal courts must presume as correct the findings of fact made by the state court unless the petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous." *Earhart v. Konteh*, 589 F.3d 337, 343 (6th Cir. 2009).

The initial inquiry, therefore, is whether Richardson seeks to apply a "rule of law that was clearly established at the time of his conviction in the state court." *Palmer*, 588 F.3d at 338.

Here, Richardson asserts that the "evidence at trial is sufficient to sustain a finding of not guilty by reason of insanity." (Dist. Ct. Dkt. 1, at 23, Ground 10). Richardson also asserts that the element "of criminal intent or guilty mind (mens rea) does not exist in this case and was not proven beyond a reasonable doubt." (Dist. Ct. Dkt. 1, at 25, Ground 11).

We must begin with the "clearly established Federal law" that is invoked in grounds 10 and 11. 28 U.S.C. § 2254(d)(1). The defense of insanity under Ohio law is an affirmative defense, whose burden of proof rests with Richardson. Ohio Rev. Code §§ 2901.01(A)(14),[2] 2901.05(A).[3]

---

[2] "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."

[3] "Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."

In *Caldwell v. Russell*, we held that "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." 181 F.3d. 731, 740 (6th Cir. 1999); *see also State v. Hancock*, 108 Ohio St.3d 57, 63 (Ohio 2006) (Ohio state court adopting the reasoning of *Caldwell* and finding that the Ohio "insanity defense does not involve the substantive elements of the criminal offense."). Accordingly, because due process is not implicated by Ohio's insanity defense, ground 10 does not invoke a clearly established Federal law.

However, evidence of Richardson's mental health may be relevant in evaluating ground 11. In *Clark v. Arizona*, the Supreme Court noted that:

> [E]vidence tending to show that a defendant suffers from mental disease and lacks capacity to form *mens rea* is relevant to rebut evidence that he did in fact form the required *mens rea* at the time in question; this is the reason that [the petitioner] claims a right to require the factfinder in this case to consider testimony about his mental illness and his incapacity directly, when weighing the persuasiveness of other evidence tending to show *mens rea*, which the prosecution has the burden to prove.

548 U.S. 735, 769-70 (2006).

Here, Richardson alleges insanity as a defense and as a means to negate a finding of the requisite *mens rea*. The due process clause requires the state to prove beyond a reasonable doubt "the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "[T]he relevant question," in a sufficiency of the evidence claim, "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). Further, "the factfinder's roles as weigher of the evidence is preserved through a legal conclusion

that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id*. (emphasis original).

Richardson was charged and convicted of murder in violation of Ohio Revised Code § 2903.02(A), which reads in relevant part: "No person shall purposely cause the death of another." Richardson acted purposefully if it was "his specific intention to cause" the victim's death. Ohio Rev. Code § 2901.22(A). The state trial judge addressed each element of the crime:

> Putting aside the major issue here, which is the defense of insanity, it's obvious that all of the elements [of the charged murder offense and firearms specifications] have been proven. I don't think it's even been denied by the defense. In other words, Nathaniel Richardson is the person who committed the offense; Kenneth Lewis was killed; we know he was killed with a gun; it was in Nathaniel's possession, and which he used; and since he walked up – since the defendant walked up behind [Lewis] and shot him in the back of the head, we can assume it was done purposely. So the elements of the offense are proven.

(Dist. Ct. Dkt. 31-7, Ex. 46, Tr. 322-23; Dist. Ct. Dkt. 51, R&R at 32.)

With regard to Richardson's evidence of insanity, in so far as it is relevant to *mens rea*, the state trial court carefully weighed and considered the evidence:

> Doctor Chiappone [defense witness] says that at the time this event occurred the defendant didn't know it was wrong. Doctor Hawkins [prosecution witness] says he knew it was wrong. How are you going to break this impasse? One way is to throw up your hands and say, I can't break the impasse.
>
> The other thing that has helped me more than anything is the tape... I saw the murder just as well, maybe better, than if I was there, because if I'd been there, I couldn't play it back. I played it back about eight times or more.
>
> And what happened is that there was initial talking, didn't amount to much between the two, but at the actual murder, the defendant, apparently, came to the door, walked in a very casual, very casually walked to his left about 10 feet, casually turned around, started very casually back towards the counter, suddenly sped up, pulled out the gun, shot the victim in the back of the head and quickly exited the premises.
>
> Now, if you look at that, instead of looking at the psychiatrist, look at the actions, you don't have a man who appears to fear that person he's shooting is going to harm him.

-6-

It appears to me, rather, a hunter stalking an unsuspecting prey. Sneaking action. He sneaked in, shot the man and left.

Now, according to Doctor Chiappone . . ., at the instant the defendant shot the victim, he was afraid that he was going to be injured, but at the same time both doctors agree that the defendant wasn't hallucinating, and it is absolutely impossible for the defendant to believe he was threatened at the instant he shot the victim unless he was hallucinating. The delusion that he had been threatened by words is not an hallucination. And so, although self-defense is not the defense here, still self-defense is part of the mental process.

In other words, why did the defendant kill the victim? Chiappone doesn't know, except to say that he feared him, but when Chiappone says he feared him at the instant he shot him, that does not [com]port with what we've seen, and it doesn't even comport with what the defendant told Chiappone, because he told him that he was afraid the victim would kill him, not that he was immediately threatened.

And in Doctor Hawkins' interview with the defendant, the defendant said he readily admitted that he became angry when confronted by the younger man in the convenien[ce] store. I think that's more probably what happened here.

Again, in this interview with the police, the defendant, in describing what happened said, "Did you go get your juice and then come backup or what?"

"No. No. As soon as I came in the store, that's when he started mouthing off again. And I never even got a chance to get. I was walking towards the juice, to where they keep the juice at, but he just kept on talking, so I turned around. I walked past him, turned around, pulled the gun out of my jacket, turned around and shot him."

Apparently, it never occurred to either doctor, mainly, that this gentleman was capable of lying, but that is absolutely not what happened. And I don't think we have to take him at his word when he said that's what happened. He sneaked in the store, pretended to be – he was actually nonchalant upon entering the store, nonchalant in turning around. He showed no indication that he thought he was being talked to by the victim or challenged by the victim, but sneaked up on him. . . . He moved at great speed. I think it's very likely that the defendant being a smart man is lying. And certainly his actions [d]o not comport with the mental state that's being attributed to him by the defense. His actions show that of a deliberate, willful sneaking and hunting of an unsuspecting prey, undoubtedly, because he was angry.

And so, at the basic minimum, the defense of insanity, or not knowing that what he did was wrong, has not been proven. In fact, I believe that it's rather obvious that he knew it or he wouldn't have been sneaking. And he wasn't hallucinating or he would

have just come out and shot the man. And if he hadn't felt guilty, he may or may not have run. He might have stood there and waited for the police.

So those are my rationales for the evidence. And it's obvious that, as a result of that, already having found the elements of the crime, that I find the defendant guilty of murder as charged. . . .

(Dist. Ct. Dkt. 51, R&R at 33-35; Dist. Ct. Dkt. 31-7, Ex. 46).

The Ohio Court of Appeals, reviewing the sufficiency of the evidence claim, agreed with the state trial judge and held that:

The trial court accepted Dr. Hawkins's testimony that Richardson was aware of the wrongfulness of his actions at the time of the offense. "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts."[] We cannot say that the trial court lost its way in finding that Richardson had failed to overcome the presumption of his sanity by a preponderance of the evidence.[]

(Dist. Ct. Dkt. 51, R&R, at 28; Dist. Ct. Dkt. 25, Ex.13, pp. 2-3) (footnotes to state case and statutory citations omitted).

The experts for both the prosecution and the defense testified that Richardson suffered from paranoid delusional disorder. However, the two experts disagreed over the extent to which Richardson was aware of the wrongfulness of his actions at the time of the crime. The prosecution's expert, James R. Hawkins, M.D., maintained that Richardson was aware of the wrongfulness of his actions based on the facts of the crimes. Specifically, Richardson did not initially respond to the victim's profanities but instead left the store, came back inside, and calmly shot the victim; then he turned his guns over to a security guard and called the police to report himself. During his interview with Dr. Hawkins, Richardson expressed some remorse for causing the victim's death. Furthermore, Dr. Hawkins found that Richardson had managed his delusions for years by precautionary measures such as staying away from people, barricading himself, and calling the police. All told, Dr. Hawkins

testified that "[t]here was nothing that [Richardson] said to me that made me believe that he didn't know that what he did was wrong." (Dist. Ct. R.E. 51 at 31).

Meanwhile, the defense expert, David Chiappone, Ph.D., testified that Richardson's delusions made him believe that the victim was going to kill him and that his mental defect kept him from knowing right from wrong at the time of the offense. However, Dr. Chiappone admitted that he did not have a good explanation for why Richardson felt that the victim posed a danger to him despite the fact that the interaction between Richardson and the victim had ended and Richardson had left the store. He also admitted that he had only seen one other case of a patient who suffered from the same type of mental defect as Richardson.

Because there was conflicting testimony regarding Richardson's mental state at the time of the crime, the trial judge relied in large part on the videotape of Richardson shooting the victim in determining whether the government had proven the element of criminal intent beyond a reasonable doubt. Notably, neither expert had seen this videotape. In presenting his rationale, the judge thoroughly explained the ways in which the videotape provided context for the experts' assessments and clarified Richardson's mental state at the time of the crime.

Upon review of the evidence presented at trial, as well as the state trial court's careful analysis of its findings concerning the element of *mens rea*, the trial judge could reasonably infer on the basis of the evidence presented that Richardson had the requisite *mens rea*.

Accordingly, this court cannot find that the state court unreasonably applied clearly established Federal law and Richardson's petition for habeas relief must therefore be denied.

**III.    Conclusion**

For the reasons discussed above, the district court's order denying Richardson's petition for a writ of habeas corpus is affirmed.