[Cite as *State v. Mundell*, 2012-Ohio-3378.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 11 CAA 10 0097 |
| KYLAN H. MUNDELL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No.  10 CR I 12 0622


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         July 26, 2012


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

CAROL HAMILTON O'BRIEN          FREDERICK BENTON
PROSECUTING ATTORNEY            98 Hamilton Park
DOUGLAS DUMOLT                  Columbus, Ohio  43202
ASSISTANT PROSECUTOR
140 North Sandusky Street, 3rd Floor
Delaware, Ohio  43015

*Wise, J.*

**{¶1}** Appellant Kylan Mundell appeals his conviction, in the Court of Common Pleas, Delaware County, on one count of aggravated assault and one count of assault on a school administrator. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** On the evening of December 10, 2010 Appellant Kylan Mundell went to his alma mater, Westerville Central High School, to attend a basketball game along with his sister and some friends. The game was a popular matchup against Westerville North High School.

**{¶3}** Shortly after the game, an unrelated brawl broke out in the school parking lot. Andrew Ey, Westerville Central High School's athletic director, came outside the school building to investigate the situation, which was being broken up by the time he arrived. Ey, along with Todd Spinner, Westerville Central High School's principal, and Jerry Davis, a volunteer assisting with the athletic program, then proceeded to check the east side of the building to try to keep people who had come to pick up attendees from parking their vehicles in the fire lane area.

**{¶4}** The three men noticed an unoccupied car, with tinted windows, parked in the fire lane area.[1] At about this time, appellant came outside and observed the men gathered near the vehicle. According to Ey, appellant loudly approached and told him to "get the fuck away from my car." Tr. at 193. Ey also later testified that after he told appellant he had to move the car, appellant stated that he would park "wherever I want to fucking park." Tr. at 194. As further analyzed infra, the verbal altercation between

---

[1] Appellant later testified he was driving a Ford Taurus that night. See Tr. at 789, 792.

appellant and Ey escalated into a physical fight, resulting in Ey being pinned to the ground and suffering a dislocated shoulder and a cut near his ear.

{¶5} On December 17, 2010, the Delaware County Grand Jury indicted appellant on one count of felonious assault, R.C. 2903.11(A)(1), and one count of assault, R.C. 2903.13(A). Count Two specifically charged appellant with assaulting a school administrator.

{¶6} Appellant entered a plea of not guilty, and the case proceeded to a jury trial on August 16, 17, and 18, 2011. During the defense phase of the trial, appellant testified on his own behalf.

{¶7} After hearing the evidence and arguments, the jury found appellant not guilty of felonious assault, but guilty of aggravated assault and assault on a school administrator. Appellant was thereafter sentenced to a number of community control sanctions, including 120 days in jail. See Amended Sentencing Entry, October 26, 2011. The trial court further denied appellant's post-trial motion for acquittal and/or motion for a new trial.

{¶8} Appellant timely filed a notice of appeal. He herein raises the following three Assignments of Error:

{¶9} "I. APPELLANT'S CONVICTIONS FOR AGGRAVATED ASSAULT AND ASSAULT WERE NOT SUPPORTED BY LEGALLY AND FACTUALLY SUFFICIENT EVIDENCE.

{¶10} "II. APPELLANT'S CONVICTION [SIC] FOR AGGRAVATED ASSAULT AND ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND APPELLANT'S SELF DEFENSE CLAIM SHOULD HAVE BEEN UPHELD.

{¶11} "III. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL."

I.

{¶12} In his First Assignment of Error, appellant contends his convictions for aggravated assault and assault were not supported by sufficient evidence. We disagree.

{¶13} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶14} Appellant in the case sub judice was convicted of aggravated assault. Ohio's aggravated assault statute, R.C. 2903.12, states in pertinent part as follows:

{¶15} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

{¶16} "(1) Cause serious physical harm to another ***."

{¶17} The definition of "serious physical harm to persons," set forth in R.C. 2901.01(A)(5), includes:

{¶18} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶19} "(b) Any physical harm that carries a substantial risk of death;

**{¶20}** "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

**{¶21}** "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

**{¶22}** "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

**{¶23}** Appellant was also convicted of assault, in violation of R.C. 2903.13(A), with the additional finding under R.C. 2903.13(C)(2)(e) that the victim of the offense was a school administrator engaging in his official responsibilities at the time of his offense. R.C. 2903.13(A) reads, "No person shall knowingly cause or attempt to cause physical harm to another ***."

**{¶24}** The primary focus of appellant's "sufficiency" argument is on the element of causation of serious physical harm. In particular, appellant directs us to Ey's statements recorded in Riverside Hospital's emergency room records:

**{¶25}** "The patient is an athletic director _____ school, who was in the parking lot trying to break up an altercation after the game, got in the middle, got his arm jerked behind him and scratch to his left ear. Complains of pain in his right arm, difficulty to use it, and bleeding from his left ear lobe. No syncope. No other complaints".

**{¶26}** Joint Exhibit 1 -Riverside Hospital Emergency Room Records

**{¶27}** At trial, Ey testified that he had not seen the medical records in question, and that he had no idea why they indicated he was hurt breaking up an altercation. See

Tr. at 282. Nonetheless, the State presented evidence at trial that appellant and Ey engaged in a heated verbal dispute about appellant parking his car, and both men were using profanity towards each other. *See* Tr. at 194-195. During the argument, appellant told Ey that he knew where Ey lived; Ey at that point told appellant to never come near his home. Ey recalled that this was the moment appellant made physical contact with him. Ey, who was acting in his role as the school athletic director that evening, indicated he never touched appellant until after appellant "was on" him. Tr. at 197. Principal Spinner described appellant as "bull rushing" Ey and then "feverishly" punching him. Tr. at 306. Ey testified appellant then took him quickly to the ground and physically restrained him, i.e., appellant got on top of him and pinned his right arm over his head. Appellant then proceeded to punch him in the head with his other hand. The repeated punches were also observed by Principal Spinner and Jerry Davis. Another witness, Lynn Evans, also saw "the bald gentleman" being punched after he went to the ground. Tr. at 505. Spinner and a bystander, Rod Hutcherson, thereupon pulled appellant off of Ey. Although Spinner directed appellant to stay put, appellant drove away at a high speed in his car.

{¶28} According to the testimony, Ey then went to the athletic training room, where some of the trainers checked his wounds and called for an ambulance. Ey was taken to Riverside Hospital's emergency room and treated for a dislocated shoulder. He also received approximately six stitches to the cut on his ear and scar on his neck. Ey also testified that after his discharge, he could not perform many of his normal duties as athletic director for several weeks.

**{¶29}** Thus, the evidence, viewed in a light most favorable to the prosecution, established that appellant pinned Ey's arm over his head with one hand, dislocating his shoulder, and proceeded to punch him numerous times about the head with his other hand. Rational triers of fact could thus have determined that appellant caused serious physical harm to Ey under the definitions in R.C. 2901.01. Thus, despite the inconsistency in the emergency room report as to Ey's account of the events in question, the jury could have correctly found that appellant knowingly caused physical harm to Ey, the physical harm was serious, and Ey was a school administrator engaging in his official responsibilities. We therefore find the aggravated assault and assault convictions were supported by sufficient evidence.

**{¶30}** Finally, to the extent that appellant's "sufficiency of the evidence" argument goes to the issue of self-defense, we note the Ohio Supreme Court has held: "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, citing *Caldwell v. Russell* (C.A.6, 1999), 181 F.3d 731, 740, abrogated on other grounds (internal quotations omitted). In light of *Hancock*, we are restrained from addressing self-defense issues until we address appellant's "manifest weight" claim below.

**{¶31}** Appellant's First Assignment of Error is overruled.

II.

**{¶32}** In his Second Assignment of Error, appellant contends his convictions for aggravated assault and assault were against the manifest weight of the evidence. We disagree.

**{¶33}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717. R.C. 2929.191 reads in pertinent part as follows:

**{¶34}** Appellant chiefly maintains that several defense witnesses portrayed Ey as the aggressor and therefore the jury lost its way in failing to find that appellant lawfully engaged in self-defense during the post-game altercation on December 10, 2010. To establish the legal defense of self-defense, the following elements must be shown: (1) The defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. *State v. Jones,* Stark App.Nos. 2007–CA–00041, 2007–CA–00077,

2008–Ohio–1068, ¶ 32, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus. If the defendant fails to prove any one of these elements by a preponderance of the evidence, then the defendant has failed to demonstrate that he acted in self-defense. *State v. Cassano* (1996), Ohio St.3d 94, 107.

**{¶35}** Appellant, in his own trial testimony, stated that Ey told him, referring to appellant's car, to "move your piece of shit and get out of here." Tr. at 799. Appellant insisted he was trying to get in his car to leave as directed, but that Ey came up and forcibly shut the car door as appellant commenced opening it. Appellant portrayed the ensuing struggle as follows: "When I tried to get [Ey] off of me, I pushed him but he still had a hold of my vest. So when I pushed him off of me, he pulled me with him and as he stumbled, we fell; he fell and I fell on top of him from still having a hold of me." Tr. at 808. Appellant also told the jury that after they were on the ground, Ey was trying to gouge him in the eye and nose. The record before us also indicates that defense witness Rashaun Brown recalled that after appellant came outside to the fire lane, he looked like he was trying to get into his car, but that Ey stopped appellant from doing so by "approaching [appellant], yelling more words and then grab[bing] him." Tr. at 447. Another defense witness, Sandy Ventura, said both men had raised their voices to each other; Ey started repeating the directive "you need to leave now." Tr. at 621. Ventura observed Ey get closer to appellant; at that point, Ey "shoves him into the car, not into the car but against the car. And while he shoved him, he got a grip of his jacket or vest that he had on ***." *Id*. As appellant tried to "shove [Ey's] hand off," both men ended up on the ground. Tr. at 622.

**{¶36}** Another observer, Haja Swaray, noted his observation that appellant was trying to get in his car, and that Ey touched appellant by grabbing him by his vest. Tr. at 671-672. Deja Dunnings testified in pertinent part: "And Kylan opened his car door and Mr. Ey slammed his car door, kinda gave him a little shove, jacked him up by his vest, pushed him to the car." Tr. at 708. Antonio McCloud told the jury that appellant punched Ey after Ey "began jacking him up." Tr. at 776. Joleon Merchant recalled that Ey shut appellant's car door and as the two men argued, "[i]t was like [Ey] pushed him into his car." Tr. at 902-903. Finally, Dominique Hoskins, who testified via deposition, recalled that Ey grabbed appellant and "pulled [him] to the ground ***." Hoskins Depo. at 8.

**{¶37}** As this Court recognized in *State v. Freeman*, Stark App.No. 2010CA00019, 2010-Ohio-5818, ¶ 26, it is often the case in physical fight situations that events escalate and transpire rapidly, and both participants will likely thereafter claim innocence. However, in the case sub judice, we concur with the State's responsive assertion that while there was conflicting testimony among the various witnesses regarding the initial contact between appellant and Ey, there was substantial consistency in the testimony from witnesses for both sides as to what happened once the two men were on the ground.[2] Furthermore, after appellant had been pulled off of Ey, he yelled out "I punked you, bitch!" and "I got you, Ey. What now?" Tr. at 307, 390. Appellant then sped away in his car. In addition, although there were uniformed police officers providing security in the school area, appellant did not stop at the time to report the incident. These actions would have allowed the jury to further infer the

---

[2] *See, e.g.,* cross-examination of testimony of appellant, as well as defense witnesses Brown, Swaray, Dunnings, and McCloud. Tr. at 863, 457, 675, 717, 774.

consciousness of guilt on appellant's part, rather than a sense of legitimate self-defense.

**{¶38}** Upon review of both the State's witnesses and the defense witnesses, we are unpersuaded that the jury lost its way in rejecting the defense of self-defense vis-à-vis the assault charges. The jurors, as the firsthand triers of fact, were patently in the best position to gauge the truth. Upon review, we find the jury's decision did not create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered.

**{¶39}** Appellant's Second Assignment of Error is overruled.

III.

**{¶40}** In his Third Assignment of Error, appellant contends the trial court erred in denying his request for acquittal. We disagree.

**{¶41}** In determining whether or not the trial court properly denied a motion for judgment of acquittal pursuant to Crim.R. 29, an appellate court uses the same standard of review as in a sufficiency of the evidence claim. *See State v. Carter* (1995), 72 Ohio St.3d 545, 553. Appellant at this juncture generally reiterates his previous "sufficiency" arguments, and we find no basis to deviate from our prior conclusions in the present appeal.

{¶42} Appellant's Third Assignment of Error is overruled.

{¶43} For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.


By: Wise, J.

Delaney, P. J., and

Edwards, J., concur.


_____


_____


_____

JUDGES

JWW/d 0702

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| KYLAN H. MUNDELL | : | |
| | : | |
| Defendant-Appellant | : | Case No. 11 CAA 10 0097 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____

JUDGES